IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | | |
|---|---|---|
| LARRY KLAYMAN, | ) | CASE NO. 5:13 CV 0267 |
| | ) | |
| Plaintiff, | ) | JUDGE WM. TERRELL HODGES |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE |
| | ) | PHILIP R. LAMMENS |
| LAWRENCE R. LOEB, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S DISPOSITIVE MOTION TO DISMISS PURSUANT TO
FED.R.CIV.P. 12(b)(2); 12(b)(3); AND/OR 12(b)(6) WITH
MEMORANDUM IN SUPPORT**

Pursuant to Rule 12(b)(2); Rule 12(b)(3); and/or Rule 12(b)(6) of the Federal Rules of

Civil Procedure, Defendant Lawrence R. Loeb respectfully moves this Court for an order that

dismisses the Complaint of plaintiff Larry Klayman and this cause.

The grounds in support of this motion are that plaintiff's Complaint and this action fail as

a matter of law based on the following Civil Rule 12 defenses:

- Plaintiff's Complaint fails to plead any facts that would provide grounds for this
  Court to exercise personal jurisdiction over defendant Loeb, Fed.R.Civ.P.
  12(b)(2);

- Plaintiff's Complaint fails to plead any facts that would provide grounds for
  venue to be proper, Fed.R. Civ.P. 12(b)(3); and/or

- Plaintiff's Complaint fails to plead any facts that would state a claim upon which relief could be granted, Fed.R.Civ.P. 12(b)(6).

## **INTRODUCTION**

Putting aside if only briefly the manifest animosity that permeates plaintiff Larry Klayman's Complaint, the Complaint and this cause should first be understood in proper context.

The Court of Common Pleas in Ohio is the trial court of general jurisdiction in the Ohio state court system, and the Domestic Relations Division of that court hears family court proceedings for divorce, legal separation, annulment, and dissolution of marriage, as well as related child custody and support matters. Under Ohio law, the Domestic Relations Court "has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters." See OHIO REV. CODE § 3105.011.

In 2007, plaintiff Larry Klayman filed a motion to modify parental rights and responsibilities in the Domestic Relations Division of the Cuyahoga County Court of Common Pleas in Cleveland, Ohio, alleging that his former wife, Stephanie Ann Luck, had failed to comply with the visitation schedule set forth in their marriage settlement agreement. Ms. Luck later filed a motion to modify child support and temporarily suspend Klayman's visitation with their children. The trial court presiding over these post-divorce decree proceedings referred the parenting issue motion practice to defendant Lawrence R. Loeb, who is and at all relevant times was a Magistrate in the Domestic Relations Division for the Court of Common Pleas. The trial court referred the child support issues to a different Domestic Relations Court magistrate.

After exhaustive and protracted court proceedings, Magistrate Loeb filed a ninety-three (93) page single-spaced Magistrate's Decision on June 9, 2010. Reviewing that Magistrate's Decision and Klayman's objections to it, the trial court overruled Klayman's objections on June 24, 2011 and adopted Magistrate Loeb's decision in its entirety. (The court likewise adopted the

other magistrate's decision in its entirety.)   The Ohio Court of Appeals for the Eighth Judicial District affirmed the trial court's judgment.   *See Klayman v. Luck*, 8th Dist. Nos. 97074, 97075, 2012-Ohio-3354, 2012 WL 3040043 (Jul. 26, 2012)(Attached as Tab A).   On January 23, 2013, the Supreme Court of Ohio declined to hear Klayman's discretionary appeal.   *See Klayman v. Luck*, 134 Ohio St.3d 1422, 2013-Ohio-158, 981 N.E.2d 886.

Having exhausted his rights of appeal, Klayman has now filed this civil action against Magistrate Loeb.   The essence of this lawsuit is that Magistrate Loeb heard the evidence presented in the parties' post-decree judicial proceedings and subsequently rendered findings of fact (and conclusions of law) that Klayman disputes, although every Ohio court that reviewed the record of proceedings rejected Klayman's contentions.

At any rate, stripped of the Complaint's vituperation, Klayman's action here fundamentally seeks to impose civil liability on the presiding judicial officer.   What is more, that presiding judicial officer served as the *trier of fact*.   Klayman's repeated failure to persuade any court to find that Magistrate Loeb's factual findings were incorrect apparently presents   no obstacle, in his view, to just suing the trier of fact for money damages.

Klayman has no proper basis to bring this action against Magistrate Loeb.   That Klayman filed this case in a court that has no conceivable basis to exercise personal jurisdiction over Magistrate Loeb and where venue would not be proper venue in any case strongly suggests that it has been brought purely for spite.   But no matter the reason, there is no proper basis for Klayman to maintain this action against Magistrate Loeb in this Court.   For the reasons that follow, Magistrate Loeb respectfully requests that this Court dismiss the Complaint and this cause pursuant to Fed.R.Civ.P. 12(b)(2); 12(b)(3); and/or 12(b)(6).

## STATEMENT OF FACTS AND PROCEEDINGS

According to the Complaint, Klayman was divorced from Stephanie Ann Luck in June of 2003.  See Complaint at para. 7.   In the summer of 2007, Klayman filed for custody of his children in the Cuyahoga County Court of Common Pleas, Domestic Relations Division, in the matter docketed there as Klayman v. Luck, Case No. 07 DR 316840.   See Complaint at para. 8.

Klayman acknowledges that defendant Loeb "is an attorney appointed to administer to family law matters" who conducted judicial proceedings in Klayman's "custody lawsuit with his ex-wife."  See Complaint at para. 6. While declaring that defendant Loeb "is distinctively not a judge or even judicial officer," id., Klayman' Complaint makes no reference to the fact that defendant Loeb was a magistrate appointed pursuant to Rule 53 of the Ohio Rules of Civil Procedure, which authorized him to "administer to family law matters" and issue the 93-page Magistrate's Decision to which Klayman takes such vigorous exception.

In any case, Klayman alleges that shortly after the first status conference in which the court told Ms. Luck that she must abide by the parties' Marital Settlement Agreement and permit the previously agreed visitation, Ms. Luck reported to the Cuyahoga County Department of Children and Family Services ("CCDCFS") that Klayman had sexually abused one of the parties' children.  See Complaint at para. 9.  CCDCFS's initial determination was that abuse was "indicated."  See Complaint at Exhibit 1.[1]  Following a review as provided by CCDCFS policy, the agency changed its determination to "unsubstantiated."  Id.[2]  The May 2, 2008 review determination letter stated:

---

[1] An "indicated report" was one "in which there is circumstantial, or other isolated indicators of child abuse or neglect lacking confirmation; or a determination by the caseworker that the child has been abused or neglected based upon completion of an assessment/investigation."  See Ohio Administrative Code 5101:2-1-01.

[2] An "unsubstantiated report" was one in which the investigation determined no occurrence of child abuse or neglect.  See Ohio Administrative Code 5101:2-1-01.

> The question for this appeal is whether, based upon the totality of the information, this matter should be considered as an "indicated report" or an "unsubstantiated report." While reasonable minds could differ in circumstances where a young child recounts an event which occurred some time ago, my conclusion is that the allegations in this particular circumstances must be deemed "unsubstantiated."

See Complaint at Exhibit 1. On September 17, 2008, the Prosecuting Attorney concluded that there was not sufficient evidence to present the case to the grand jury. See Complaint at para. 12 and Exhibit 2.

In the course of hearing the parties' Domestic Relations Court child custody proceedings, however, Magistrate Loeb found from the evidence that Klayman had acted in a grossly inappropriate manner with his children, dismissing Klayman's motion to reallocate parental rights and responsibilities but granting him supervised parenting time with the children. As noted previously, the trial court overruled Klayman's objections to Magistrate Loeb's decision and adopted that decision in its entirety on June 24, 2011. The state court of appeals affirmed that judgment in *Klayman v. Luck*, 8th Dist. Nos. 97074, 97075, 2012-Ohio-3354, 2012 WL 3040043 (Jul. 26, 2012)(Attached as Tab A), and the Supreme Court of Ohio declined further review on January 23, 2013. *See Klayman v. Luck*, 134 Ohio St.3d 1422, 2013-Ohio-158, 981 N.E.2d 886.

On June 6, 2013, Klayman commenced this action against Magistrate Loeb, complaining that Magistrate Loeb's 93-page Magistrate's Decision violated Klayman's rights to freedom of religion under the First and Fourteenth Amendments (Count One); his right to free speech under the First and Fourteenth Amendments (Count Two); and his right to equal protection under the law under the Fourteenth Amendment (Count Three).

## ARGUMENT AND LAW

Rule 12 of the Federal Rules of Civil Procedure permits a defendant to assert certain legal defenses by motion prior to pleading.  For the reasons discussed hereafter, Klayman's Complaint against defendant should be dismissed for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2); for improper venue pursuant to Fed.R.Civ.P. 12(b)(3); and/or for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

## I.   The Complaint should be dismissed for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2).

Klayman's Complaint purports to assert claims for relief against nonresident defendant Loeb.  Because there is no basis for the exercise of personal jurisdiction over defendant Loeb, the Complaint should be dismissed for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2).

Before a district court may exercise personal jurisdiction over a nonresident defendant, the court, conducting a two-step inquiry, must determine that (1) the state's long-arm statute provides jurisdiction and (2) the defendant has sufficient minimum contacts with the forum state such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice in violation of the Due Process Clause of the Fourteenth Amendment.  *See PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 807-808 (11th Cir. 2010); *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Technologies Corp. v. Mazer*, *supra*, 556 F.3d at 1274.

On the date this case was filed, Florida's long-arm statute, codified at Fla. Stat. § 48.193, provided as follows in relevant part:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b) Committing a tortious act within this state.

(c) Owning, using, possessing, or holding a mortgage or other lien on any real property within this state.

(d) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(e) With respect to a proceeding for alimony, child support, or division of property in connection with an action to dissolve a marriage or with respect to an independent action for support of dependents, maintaining a matrimonial domicile in this state at the time of the commencement of this action or, if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not. This paragraph does not change the residency requirement for filing an action for dissolution of marriage.

(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

    1. The defendant was engaged in solicitation or service activities within this state; or

    2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

(h) With respect to a proceeding for paternity, engaging in the act of sexual intercourse within this state with respect to which a child may have been conceived.

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject

to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

***

Fla. Stat. § 48.193.[3]

In the matter at hand, Klayman's Complaint does not plead any facts which would suggest that Magistrate Loeb engaged in any of the acts enumerated in § 48.193(1)(a) through (h).  Nor does the Complaint plead any facts to suggest that jurisdiction would be proper under § 48.193(2).  Because Klayman's Complaint does not furnish any grounds for the exercise of jurisdiction under Florida's long-arm statute, his case fails at the first step of the inquiry, making it unnecessary to even consider the constitutional limitations imposed by the Due Process Clause of the Fourteenth Amendment.

But even if the analysis were to proceed to the second step of the analysis, Klayman's Complaint fails to plead any facts suggesting that the exercise of personal jurisdiction here would not violate the Fourteenth Amendment.  "A court may subject a defendant to judgment only when the defendant has sufficient contacts with the sovereign such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice."  *J. McIntyre Machinery, Ltd. v. Nicastro*, ___ U.S. ___, 131 S.Ct. 2780, 2787, 180 L.Ed.2d 765 (2011), *quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

In this case, Klayman's Complaint does not identify any act by Magistrate Loeb suggesting that he purposely availed himself of the privilege of conducting activities in Florida. *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).  There are no allegations remotely suggesting that Magistrate Loeb purposely directed his activities at residents

---

[3] Recent amendments to Fla. Stat. § 48.193 took effect on July 1, 2013.  Those amendments do not appear to be applicable to this case.

of the State of Florida or that this action results from injuries arising out of or related to any such activities. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Absent the establishment of such minimum contacts, the exercise of personal jurisdiction over Magistrate Loeb in this case would violate the Due Process Clause of the Fourteenth Amendment.

Because there is no proper basis to exercise personal jurisdiction over Magistrate Loeb in this case, defendant Loeb respectfully requests that the Complaint and this cause be dismissed pursuant to Fed.R.Civ.P. 12(b)(2).

## II.    The Complaint should be dismissed for improper venue, Fed.R.Civ.P. 12(b)(3).

Klayman's Complaint additionally fails to plead any facts that would provide a basis for venue in this district. Accordingly, the Complaint should additionally be dismissed pursuant to Fed.R.Civ.P. 12(b)(3).

28 U.S.C. § 1391(b) states as follows:

A civil action may be brought in –
1.  a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

2.  a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

3.  if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

In enacting § 1391(b), "Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 185, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979).

In this case, venue in this district would not be proper under § 1391(b)(1) inasmuch as defendant Loeb does not reside in this judicial district.

Nor would venue be proper under § 1391(b)(2) since none of "the events or omissions giving rise to the claim occurred" in this district. The mere fact that Klayman claims to reside in Florida is immaterial because none of the events giving rise to his supposed claim occurred in Florida. If there were any "events" giving rise to an actionable claim, they occurred within the judicial district of the Northern District of Ohio, Eastern Division, where the Cuyahoga County Domestic Relations Court is located.

Finally, the "catch-all" provision of § 1391(b)(3) is inapplicable here because (a) Klayman's supposed action could at least be brought in the judicial district where defendant Loeb resides and/or where a substantial part of the events or omissions giving rise to the claim occurred and (b) defendant Loeb would not be subject to the court's personal jurisdiction here, for the reasons discussed in Section I.

Because venue is not proper in this district, Klayman's Complaint and this cause should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

### III.   The Complaint should be dismissed for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6).

In *Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012), the Eleventh Circuit Court of Appeals observed:

> At the pleading stage, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Plaintiffs must plead all facts establishing an entitlement to relief with more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)]. The complaint must contain enough facts to make a claim for relief plausible on its face; a party must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173

L.Ed.2d 868 (2009], citing *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929.

*Id*. at 1324-1325.

In the matter at hand, Klayman's Complaint does not plead any facts that could state a plausible claim for relief against Magistrate Loeb.  Putting aside Klayman's ad hominem attacks, his supposed causes of action against Magistrate Loeb are utterly without any legal or factual basis.  Klayman's Complaint does not plead any facts establishing that Magistrate Loeb abridged in any way Klayman's freedom of religion under the First and Fourteenth Amendments.  Nor does Klayman plead any facts suggesting that Magistrate Loeb infringed on Klayman's rights of free speech under the First and Fourteenth Amendments.  And there is no conceivable basis whatsoever for Klayman's allegation that Magistrate Loeb violated his right to equal protection under the Fourteenth Amendment.  In short, Klayman's Complaint does not plead any facts that would constitute a plausible claim for relief.

Beyond that, Klayman's action against defendant Loeb plainly is for actions Magistrate Loeb took while acting as a judicial officer presiding over the underlying post-decree child custody family court proceedings.  Notwithstanding Klayman's assertion that Magistrate Loeb is not a "judicial officer," there assuredly could be no other basis for him to have presided over Klayman's child custody proceedings from their filing in 2007 until Magistrate Loeb issued his decision in 2010, nor would there have been any reason for Klayman to have been a party to those proceedings unless defendant Loeb had the legal authority to conduct them as a judicial officer.

Under these circumstances, Magistrate Loeb would have absolute judicial immunity for these actions undertaken while functioning as a judicial officer.    "Magistrates are judicial officers, and thus entitled to absolute immunity under the same conditions as are judges. *Pressly*

*v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987)." *King v. Myers,* 973 F.2d 354 (4th Cir. 1992). *See also Ryan v. Bilby*, 764 F.2d 1325, 1328 (9th Cir. 1985).

Finally, and as was noted initially, the fundamental essence of Klayman's Complaint is to fault Magistrate Loeb from the factual findings he made as trier of fact having heard the evidence presented in these judicial proceedings.  Whatever disagreement a litigant may have over the trier of fact's findings, suing the trier of fact for civil damages is not the proper legal remedy.  The proper legal remedy is to pursue the plain and adequate legal remedy of appeal.  Klayman pursued his appeals and lost.

Accordingly, Defendant Loeb moves that the Complaint be dismissed in its entirety at Plaintiff's cost.

Respectfully submitted,

TIMOTHY J. McGINTY, Prosecuting Attorney
of Cuyahoga County, Ohio


By:      /s/ Charles E. Hannan_____
         CHARLES E. HANNAN (Ohio Bar No. 0037153)
         Assistant Prosecuting Attorney
         The Justice Center, Courts Tower, 8th Floor
         1200 Ontario Street
         Cleveland, Ohio 44113
         Tel: (216) 443-7758/Fax: (216) 443-7602
         E-mail: channan@prosecutor.cuyahogacounty.us


By:      /s/ Kim M. Hastings_____
         KIM M. HASTINGS (Florida Bar 0698253)
         KIM M. HASTINGS, P.A.
         23241 Marsh Landing Blvd.
         Estero, Florida 33928
         Tel: (239) 947-9195/Fax: (800) 851-7484
         kmhastings@kmhlegal.com

         *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on the <u>18th</u> day of July 2013, the foregoing Memorandum in Support of Defendant's Dispositive Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(2); 12(b)(3); and/or 12(b)(6) was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


          /s/ Charles E. Hannan
CHARLES E. HANNAN
Assistant Prosecuting Attorney


          /s/ Kim M. Hastings
KIM M. HASTINGS

# TAB A

Tab A

**2012 Ohio 3354**
**LARRY ELLIOT KLAYMAN PLAINTIFF-APPELLANT**
**v.**
**STEPHANIE ANN LUCK DEFENDANT-APPELLEE**
**No. 97074**
**No. 97075**
**Court of Appeals of Ohio EIGHTH APPELLATE DISTRICT COUNTY OF CUYAHOGA**
**RELEASED AND JOURNALIZED: July 26, 2012**

JOURNAL ENTRY AND OPINION
**JUDGMENT:** **AFFIRMED**
Civil Appeal from theCuyahoga County Common Pleas CourtDomestic Relations DivisionCase No. D-316840

**BEFORE:** Boyle, J., Stewart, P.J., and Rocco, J.

Page 2

### ATTORNEY FOR APPELLANT

Roger L. Kleinman
Cavitch, Familo & Durkin Co., LPA

### ATTORNEYS FOR APPELLEE

Suzanne M. Jambe
James H. Rollinson
Baker & Hostetler, LLP

Guardian ad litem

Jennifer L. Malensek

Page 3

MARY J. BOYLE, J.:

{¶1} Plaintiff-appellant, Larry Klayman, appeals from two judgments denying his motion to modify parental rights and responsibilities and finding him in contempt of court. He raises seven assignments of error for our review:

"[1.] The trial court erred as a matter of law in failing to apply the law of the State of Virginia, where the Virginia divorce decree specifically provides that Virginia law applies.

"[2.] The magistrate's personal animosity towards appellant constitutes bias or prejudice disqualifying him from ruling.

"[3.] The trial court's finding that appellant engaged in inappropriate touching of his child is contrary to the manifest weight of the evidence and an abuse of discretion.

"[4.] The trial court erred as a matter of law in terminating appellant's right to free access to his children without any expert testimony or interview with the children, thereby resulting in the magistrate himself functioning as an expert witness.

"[5.] The trial court erred as a matter of law in considering evidence which predated the filing of appellee's motions to modify the visitation order.

"[6.] The trial court abused its discretion by denying appellant's motion to show cause where appellee admitted she denied visitation without a court order.

"[7.] The trial court's award of $325,000 in attorney's fees is an abuse of discretion."

Page 4

{¶2} Finding no merit to his appeal, we affirm the judgment of the trial court.

Procedural History and Factual Background

{¶3} Klayman and defendant-appellee, Stephanie Luck, were married in Washington D.C. in July 1996. They had two children born during the marriage, the first in December 1997, and the second in November 1999. They were divorced in Virginia in June 2003 after entering into a Marriage Settlement Agreement ("Agreement") that was incorporated into their divorce decree.

Klayman v. Luck, 2012 Ohio 3354 (Ohio App., 2012)

**{¶4}** The Agreement provides that Luck would have "legal and physical custody of the children and shall have full control and supervision of their care, guidance, maintenance and education, subject to [Klayman's] rights of reasonable access and visitation" as further set forth in the Agreement. With respect to visitation, the Agreement provided:

> The Husband shall have visitation with the minor children as is reasonable, particularly since the parties agree that the Wife and children may move to Cleveland, Ohio, and the Husband resides in Florida and the Washington D.C. Metropolitan area. The Husband shall have visitation with the minor children on the first and third weekends per month on Saturday from at least 9:00 a.m. until 8:00 p.m. and on Sunday from at least 10:00 a.m. until 5:00 p.m. The Wife shall have the final decision regarding the children staying overnight with their Father, and the Wife shall not unreasonably withhold her consent. Subject to the Wife having the final say regarding the children staying overnight with their Father, the Husband shall have the right to request that the children visit him away from Cleveland and for reasonable summer vacation and the Wife shall not unreasonably withhold her consent.

**{¶5}** Regarding child support, Klayman agreed to pay $1,800 per month, as well as pay for the children's private school education up to $5,000 per year.

Page 5

**{¶6}** The Agreement further provided, under "Governing Law," that "[t]he validity, enforceability and interpretation of this Agreement shall be determined and governed by the laws of the State of Virginia."

**{¶7}** As specified in the Agreement, Luck moved to the Cleveland area with the children in 2004. The record reveals that the parties began arguing over Klayman's visitation with the children and his failure to pay support. In October 2007, a Virginia court found Klayman in contempt of court for failing to pay $74,015 in support. To purge his contempt, Klayman paid the full amount to Luck, plus interest and attorney fees.

**{¶8}** In July 2007, Klayman filed a motion to modify parental rights and responsibilities in Cuyahoga County, alleging that Luck failed to comply with the visitation schedule set forth in their Agreement. He simultaneously filed a petition to register their foreign divorce decree. In August 2007, he filed a motion to show cause claiming that Luck was denying him visitation. In September 2007, Luck moved to modify child support and temporarily suspend visitation. Luck further filed several motions to show cause regarding Klayman's nonpayment of child support.

**{¶9}** Separate magistrates heard the issues. One magistrate heard the parenting issues, and one magistrate presided over the child support issues. Regarding the parenting issues, the magistrate granted Luck's motion, imposed supervised visitation on Klayman, and ordered that Klayman pay Luck $325,000 in attorney fees. With respect to the child support issues, the magistrate found Klayman in contempt of court.

Page 6

**{¶10}** Klayman filed objections to both magistrate's decisions. The trial court overruled Klayman's objections, adopted the magistrate's decisions in their entirety, and ordered them into law. It is from these judgments that Klayman appeals.

Standard of Review

**{¶11}** Unless otherwise noted, our standard of review is whether the trial court abused its

discretion in adopting the magistrates' decisions. A trial court's ruling on objections to a magistrate's decision will not be reversed absent an abuse of discretion. Gobel v. Rivers, 8th Dist. No. 94148, 2010-Ohio-4493, ¶ 16. Furthermore, when reviewing the propriety of a trial court's determination in a domestic relations case, an appellate court generally applies an abuse of discretion standard. Gray v. Gray, 8th Dist. No. 95532, 2011-Ohio-4091, ¶ 7, citing Booth v. Booth, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

{¶12} An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "Abuse of discretion" is a term of art, describing a judgment neither comporting with the record, nor reason. See, e.g., State v. Ferranto, 112 Ohio St. 667, 676-678, 148 N.E. 362 (1925). "A decision is unreasonable if there is no sound reasoning process that would support that decision." AAAA Ent., Inc. v. River Place Comm. Urban Redevelopment, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Further, an abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on

Page 7

clearly erroneous findings of fact." Thomas v. Cleveland, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

Choice-of-Law Clause

{¶13} In his first assignment of error, Klayman argues that the magistrate erred by not applying Virginia law as required by the Settlement Agreement. He maintains that if the magistrate would have applied Virginia law, specifically Hartman v. Hartman, 33 Va.Cir. 373, 1994 WL 1031136 (Apr. 13, 1994), he would have prevailed. We disagree.

{¶14} The parties' Settlement Agreement is a contract. The interpretation of a contract is a question of law that we review de novo. Allstate

Indemn. Co. v. Collister, 11th Dist. No. 2006-T-0112, 2007-Ohio-5201, ¶ 15, citing Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995). Our primary goal is to ascertain and give effect to the intent of the parties. Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos., 86 Ohio St.3d 270, 273, 652 N.E.2d 684 (1999). We presume the intent of the parties to a contract resides in the language used in the written instrument. Kelly v. Med. Life Ins. Co., 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus.

{¶15} A choice-of-law clause is "[a] contractual provision by which the parties designate the jurisdiction whose law will govern any disputes that may arise between the parties." Black's Law Dictionary 275 (9th Ed.2009). The substantive law of jurisdictions can differ significantly, and this type of clause is employed to reflect the justified expectations of the parties who bargained over this term. Ohio has adopted the

Page 8

1 Restatement of the Law 2d, Conflict of Laws, Section 187, at 2 (1971), to determine whether the state's law chosen by the parties should govern the contractual dispute. Schulke Radio Prods., Ltd. v. Midwestern Broadcasting Co., 6 Ohio St.3d 436, 453 N.E.2d 683 (1983), syllabus; Ohayon v. Safeco Ins. Co., 91 Ohio St.3d 474, 486, 747 N.E.2d 206 (2001). But an Ohio court cannot invoke this section unless it is "satisfied that the parties have actually made an express choice of law regarding the issue before the court." Ohayon at 486, citing 1 Restatement of the Law 2d, Conflict of Laws, Section 187, Comment a (1971). The law of the forum state, in this case Ohio, determines whether the parties did in fact choose the law to govern the dispute. See Restatement, Section 187, Comment a ("The rule of this Section is applicable only in situations where it is established to the satisfaction of the forum [Ohio] that the parties have chosen the state of the applicable law.").

{¶16} After reviewing the Agreement, we find that the choice-of-law clause does not apply

in this case. The clause only applies to "[t]he validity, enforceability and interpretation" of the Agreement. It says nothing about Virginia law applying to modifications of parental rights and responsibilities. See DeSantis v. Lara, 1st Dist. No. C-080482, 2009-Ohio-2570 (where agreement lacks a choice-of-law clause governing modifications, Ohio law applies). Having found that Ohio law applies, we need not address Klayman's arguments regarding Hartman, 33 Va.Cir. 373.

{¶17} Accordingly, Klayman's first assignment of error is overruled.

Bias or Prejudice

Page 9

{¶18} In his second assignment of error, Klayman argues that the magistrate's opinion regarding the parenting issues "is so infused with personal animosity towards [him] that it should be viewed as a textbook example of an abuse of discretion." Klayman raises many instances where he claims the magistrate was prejudiced against him.

{¶19} The docket reveals that after the trial was over, Klayman moved to disqualify the magistrate. The trial court denied his motion.

{¶20} Civ.R. 53(D)(6) provides that disqualification of a magistrate for bias or other cause is within the discretion of the court. See also In re Disqualification of Wilson, 77 Ohio St.3d 1250, 1251, 674 N.E.2d 360 (1996). Accordingly, we will not reverse the trial court's decision absent an abuse of discretion. Id.

{¶21} Klayman does not contend that the trial court was also biased, nor does he argue that the trial court failed to independently review the magistrate's findings of fact and conclusions of law. We therefore presume that the trial court independently reviewed the magistrate's decision and found no bias or prejudice because it overruled Klayman's objections, adopted the magistrate's decision as its own, and ordered it into law. Thus, we conclude that the trial court

did not abuse its discretion when it denied Klayman's motion to disqualify the magistrate.

{¶22} Klayman's second assignment of error is overruled.

Manifest Weight of the Evidence

Page 10

{¶23} In his third assignment of error, Klayman argues that the magistrate's finding that he engaged in inappropriate touching of his child was against the manifest weight of the evidence.

{¶24} A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co., 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v. Garson, 66 Ohio St.3d 610, 614 N.E.2d 742 (1993). Where the decision in a case turns upon credibility of testimony, and where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court. See Seasons Coal Co. v. Cleveland, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); Cohen v. Lamko, Inc., 10 Ohio St.3d 167, 462 N.E.2d 407 (1984).

{¶25} The issues raised by Klayman involve credibility assessments made by the magistrate. Klayman challenges these findings. The magistrate heard evidence from the children's pediatrician who reported allegations of sexual abuse to children services, and from a social worker at children services who found that sexual abuse was "indicated." Although the social worker's finding was later changed to "unsubstantiated" when Klayman appealed, the magistrate explained that the supervisor who changed the social worker's finding did not testify. The magistrate pointed out that

Page 11

he was obligated to make his own independent analysis based upon the parties and the evidence before him. In doing so, the magistrate found

> on more than one occasion [Klayman] act[ed] in a grossly inappropriate manner with the children. His conduct may not have been sexual in the sense that he intended to or did derive any sexual pleasure from it or that he intended his children would. That, however, does not mean that he did not engage in those acts or that his behavior was proper.

{¶26} The magistrate further found it significant that although Klayman denied any allegations of sexual abuse, he never denied that he did not engage in inappropriate behavior with the children. The magistrate further found it notable that Klayman, "for all his breast beating about his innocence * * * [he] scrupulously avoided being questioned by anyone from [children services] or from the Sheriff's Department about the allegations," and that he refused to answer any questions, repeatedly invoking his Fifth Amendment rights, about whether he inappropriately touched the children. "Even more disturbing" to the magistrate was the fact that Klayman would not even answer the simple question regarding what he thought inappropriate touching was. The magistrate stated that he could draw an adverse inference from Klayman's decision not to testify to these matters because it was a civil proceeding, not criminal.

{¶27} After reviewing the record, we find no abuse of discretion on the part of the trial court in overruling Klayman's objections regarding the magistrate's finding that Klayman inappropriately touched the children.

{¶28} Klayman's third assignment of error is overruled.

Expert Testimony

Page 12

{¶29} In his fourth assignment of error, Klayman maintains that the trial court erred in terminating his "right to free access to his children" without any expert testimony or interview with the children. He claims that the magistrate acted as a psychologist in reaching this "draconian result."

{¶30} After review, we find no abuse of discretion on the part of the trial court in adopting the magistrate's decision. In child custody proceedings, a court is not required to interview the children without a request by one of the parties to do so. R.C. 3109.04. Klayman never requested the court interview the children. Further, the magistrate was permitted to make decisions based upon the evidence before him, which is what he did. If Klayman wanted the magistrate to consider expert testimony, it was his burden to place expert testimony on the record. He failed to do so.

{¶31} Klayman's fourth assignment of error is overruled.

Motion to Modify Parenting Time

{¶32} In his fifth assignment of error, Klayman contends that the magistrate erred by considering evidence that predated Luck's motion to modify his parenting time. Specifically, Klayman argues that the magistrate erred by considering notes that Luck had taken before she and Klayman were divorced. Luck's notes were part of the children services' social worker's file. Although Klayman did not object to these notes being admitted at trial, we will briefly address his argument.

{¶33} In support of this argument regarding Luck's motion to modify parenting time, Klayman incorrectly cites to R.C. 3109.04(E)(1)(a). But it is R.C. 3109.051 that

Page 13

addresses parenting time rights. Pursuant to R.C. 3109.051, "a trial court is permitted to modify visitation rights if it determines that the modification is in the child's best interest." Lisboa v. Lisboa, 8th Dist. No. 92321, 2009-

fastcase

Ohio-5228, ¶ 11. In determining whether a modification is in the child's best interest, the court is guided by the enumerated factors listed in R.C. 3109.051(D), which includes, among other things, the health and safety of the child, the prior interaction and interrelationships of the child with the child's parents, and whether there is reason to believe that either parent has acted in a manner resulting in the child being an abused or neglected child. R.C. 3109.051(D)(1), (7), and (11).

{¶34} Accordingly, we find no error on the part of the magistrate in considering the social worker's file as it was relevant to determining Luck's motion to modify parenting time. Specifically, it was relevant to determining what was in the children's best interest.

{¶35} Klayman's fifth assignment of error is overruled.

Motion to Show Cause

{¶36} In his sixth assignment of error, Klayman argues that the trial court abused its discretion when it failed to find Luck in contempt where she admitted that she denied him visitation without a court order.

{¶37} According to the record, the magistrate dismissed Klayman's motion to show cause after he failed to appear on the final date of the trial after being warned that there would be no further continuances. Klayman does not argue that the magistrate

Page 14

erred when it dismissed his motion to show cause. Thus, we find no abuse of discretion on the part of the trial court in adopting the magistrate's decision.

{¶38} Klayman's sixth assignment of error is overruled.

Attorney Fees

{¶39} In his final assignment of error, Klayman argues that the trial court's award of attorney fees to Luck in the amount of $325,000

was not equitable and was an abuse of discretion.

{¶40} R.C. 3105.73(B) provides that in any post-decree motion or proceeding, "the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." In determining whether an award of attorney fees is equitable, "the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets."

{¶41} After reviewing the record, we find no abuse of discretion on the part of the trial court in adopting the magistrate's decision. Although the award was significant, we find it to be entirely appropriate under the facts of this case. The magistrate found that Klayman's conduct "made this matter anything but routine and straightforward." He found that not only did Klayman file many motions in the case, he also battled the release of his financial records "here as well as in Alabama and Florida." Additionally, Klayman filed a petition for writ of mandamus, four interlocutory appeals, and sued Luck and her counsel in federal district courts in Florida. Klayman "repeatedly interfered

Page 15

with" Luck's legitimate discovery requests, and refused to "accept and adhere" to decisions of the court and the court of appeals. The magistrate found that Klayman purposefully prolonged litigation, telling Luck's mother that if she did not settle, he would take the case through years of litigation which would cost them hundreds of thousands of dollars. Klayman did not deny that he made the statement.

{¶42} The magistrate further considered the testimony of Luck's counsel, who practices almost exclusively in domestic relations matters, that this was the most "atypical domestic relations matter" that she had ever been involved in. Luck's counsel testified that since 2007 she had charged Luck $464,041 in attorney fees and an additional $17,208 in expenses.

fastcase

Klayman v. Luck, 2012 Ohio 3354 (Ohio App., 2012)

**{¶43}** Considering all of the factors, the magistrate found that an award of $325,000 was appropriate and equitable. After reviewing the record, we find no abuse of discretion.

**{¶44}** Klayman's seventh assignment of error is overruled.

**{¶45}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Page 16

MARY J. BOYLE, JUDGE

MELODY J. STEWART, P.J., and KENNETH A. ROCCO, J., CONCUR

