UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LARRY KLAYMAN,

                Plaintiff,

-vs-                                  Case No.  5:13-cv-267-Oc-10PRL

LAWRENCE R. LOEB,

                Defendant.

_____/

# O R D E R

      Plaintiff Larry Klayman, a resident of Ocala, Florida proceeding *pro se*, has filed a four-count Complaint (Doc. 1) against Defendant Lawrence R. Loeb, a court-appointed Magistrate in Ohio.  Mr. Klayman alleges that Mr. Loeb, while presiding in Ohio over a custody dispute involving Mr. Klayman and his ex-wife, deprived Mr. Klayman of his constitutional rights, and intentionally caused Mr. Klayman severe emotional distress.   Mr. Klayman seeks compensatory and punitive damages, declaratory and injunctive relief, and attorney's fees and costs.

      Mr. Loeb has filed a motion to dismiss the Complaint in its entirety for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), improper venue pursuant to Fed. R. Civ. P. 12(b)(3), and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 9).  Mr. Klayman has filed a response in opposition, and both sides have filed supplemental briefs (Docs. 16, 19, 22).  Mr. Klayman has also moved to disqualify

Mr. Loeb's counsel (Doc. 12), to which Mr. Loeb has filed a response in opposition (Doc. 13).  Both motions are therefore ripe for disposition.

Upon due consideration, the Court finds that the motion to disqualify counsel is without merit and shall be denied, and that the Complaint is due to be dismissed in its entirety for lack of personal and subject matter jurisdiction and improper venue.

### Factual Background

The facts, as alleged in the Complaint and in the documents attached to the motion papers,[1] are as follows.  Plaintiff Larry Klayman, a resident of Ocala, Florida, was divorced from his ex-wife, Stephanie Ann Luck, in June of 2003.  At the time of the divorce, both Mr. Klayman and Ms. Luck were residents of Virginia, and the divorce was finalized in that state.  They had two minor children, and Ms. Luck was awarded primary custody.

At some point after the divorce, Ms. Luck moved to Ohio with the children.  Soon thereafter, Mr. Klayman and Ms. Luck began to argue over custody, visitation, and child support issues.  In the summer of 2007, Mr. Klayman filed in the Court of Common Pleas for Cuyahoga County, Ohio a petition to modify his parental rights and for

―――――――――――――――――

[1]Normally the Court limits its analysis of a motion to dismiss to the facts as alleged on the face of the Complaint.  In this case, Mr. Loeb seeks dismissal on the grounds of lack of personal jurisdiction and improper venue, and in such instances, the Court may consider facts outside the Complaint.  See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1268 (11th Cir. 2002); Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 (11th Cir. 1999).

custody, Case No. DR-07-316840.  Ms. Luck then filed a motion to modify child support and to temporarily suspend Mr. Klayman's visitation with their children.

The Ohio court referred the custody and parental rights proceedings to Mr. Loeb, who was (and apparently remains to date) a court-appointed Magistrate in the Domestic Relations Division for the Court of Common Pleas.  The child support issues were referred to a different Domestic Relations Court Magistrate.

During the course of the proceedings before Mr. Loeb concerning custody and parental rights, Ms. Luck alleged that Mr. Klayman had sexually abused one of their children.  A complaint was filed with the Cuyahoga County Department of Children and Family Services.  The Department initially determined that abuse was "indicated," but following an investigation, the Department changed its determination to "unsubstantiated."  The Cuyahoga County Prosecutor's Office also investigated the allegations and determined that there was insufficient evidence to present the case to a grand jury.  It does not appear that any further actions were taken with respect to Ms. Luck's claim.

The proceedings before Mr. Loeb went on for several years.  Finally, on June 9, 2010, Mr. Loeb issued a 93-page single spaced Magistrate Decision.  Mr. Loeb granted Ms. Luck's motion to suspend visitation, imposed supervised visitation on Mr. Klayman, and ordered Mr. Klayman to pay Ms. Luck $325,000 in attorney's fees.  In the Magistrate Decision, Mr. Loeb rejected nearly all of Mr. Klayman's arguments, and

noted Mr. Klayman's obstreperous conduct, numerous misrepresentations, excessive and meritless motions practice, and other delaying tactics.

Mr. Loeb also discussed in the Magistrate Decision the allegations of child abuse levied against Mr. Klayman.  In particular, after holding hearings and receiving testimony from the children's physician and a social worker, Mr. Loeb held that "on more that one occasion [Klayman] act[ed] in a grossly inappropriate manner with the children.  His conduct may not have been sexual in the sense that he intended to or did derive any sexual pleasure from it or that he intended his children would.  That, however, does not mean that he did not engage in those acts or that his behavior was proper."  Mr. Loeb further found that Mr. Klayman never denied any inappropriate behavior with his children, refused to be questioned by anyone from the Department of Children and Family Services or the Sheriff's Department, and refused to answer any questions from Mr. Loeb during the hearing.

Mr. Klayman filed objections to the Magistrate Decision.  The trial court overruled the objections and adopted the Magistrate Decision in its entirety.  Mr. Klayman then appealed to the Court of Appeals of Ohio for the Eighth Appellate District County of Coyahoga, alleging, among other things, bias and prejudice on the part of Mr. Loeb, and improper fact finding concerning the allegations of child abuse.  On July 26, 2012, the appellate court rejected all of Mr. Klayman's arguments and affirmed the trial court's judgment.  See Klayman v. Luck, 2012 WL 3040043 (Ohio Ct. App. Jul. 26, 2012).  The

Supreme Court of Ohio declined to hear Mr. Klayman's discretionary appeal on January 23, 2013.

## Procedural History

On June 6, 2013, Mr. Klayman filed the present case.  Mr. Klayman contends that Mr. Loeb was biased against him due to his religious and political beliefs.  The Complaint alleges that Mr. Loeb is Jewish and a Democrat, and that Mr. Klayman is a Messianic Jew and a conservative activist.  Mr. Klayman contends that Mr. Loeb's Magistrate Decision is a false and misleading "diatribe" which Mr. Loeb deliberately and maliciously issued "in order to chill if not suff out Plaintiff Klayman's public interest advocacy and his personal life."  (Doc. 1, ¶ 6).

Mr. Klayman has filed four claims against Mr. Loeb:  (1) a 42 U.S.C. § 1983 claim alleging violations of Mr. Klayman's First Amendment right to freedom of religion; (2) a § 1983 claim alleging violations of his First Amendment right to free speech; (3) a § 1983 claim alleging violations of his Fourteenth Amendment right to equal protection; and (4) a state law claim for intentional infliction of emotional distress (Doc. 1).  Mr. Klayman seeks in excess of $3,000,000 in compensatory and punitive damages, attorney's fees and costs.  He also seeks a declaration that Mr. Loeb engaged in unlawful and unconstitutional practices; an injunction permanently restraining Mr. Loeb from engaging in such unlawful and unconstitutional practices in the future; an injunction ordering a public apology from Mr. Loeb and ordering Mr. Loeb to "correct[

] his false, malicious recommended findings;" and an injunction directing Mr. Loeb "to take such affirmative action as is necessary to ensure that the effects of the unconstitutional and unlawful practices are redressed and eliminated and do not continue to affect [Mr. Klayman's], or others' legal rights."  (Doc. 1, p. 20).

**Discussion**

**I.    Motion To Disqualify Counsel**

Mr. Loeb has moved to dismiss this case on the grounds of lack of personal jurisdiction and improper venue and failure to state a claim for relief  (Doc. 9).  Before the Court can consider this motion, however, the Court must first address Mr. Klayman's motion to disqualify Mr. Loeb's counsel (Doc. 12).

Mr. Loeb was appointed as a Magistrate for the Domestic Relations Division of the Court of Common Pleas in Ohio.  See Ohio R. Civ. P. 53(A).  Despite Mr. Klayman's repeated references to Mr. Loeb as an attorney, with respect to this case, Mr. Loeb is a non-elected judicial officer for the Court of Common Pleas, and as such, he, along with all other judges of that Court, are deemed "county officers" under Ohio law.  See State ex rel. Gains v. Maloney, 809 N.E. 2d 24, 26-27 (Ohio 2004).  Pursuant to Ohio statutes, the county prosecuting attorney is the legal advisor for all county officers and "shall prosecute and defend all suits and actions that any such officer . . . directs or to which it is a party, and no county officer may employ any other counsel or attorney at the expense of the county. . . ."  Ohio Rev. Code 309.09(A).  According

to this legal authority, Cuyahoga County Assistant Prosecuting Attorney Charles E. Hannan entered his Special Appearance as counsel for Mr. Loeb in this case.

Mr. Klayman seeks to disqualify Mr. Hannan based on an "apparent conflict of interest" and "blatant violations of the Florida Rules of Professional Conduct." (Doc. 12, p. 1). Mr. Hannan is a member of the same prosecutor's office that decided not to present to the grand jury the allegations of Mr. Klayman's sexual abuse of his children. According to Mr. Klayman, in order to defend Mr. Loeb in this case, his counsel "will indisputably be required to advocate against its earlier findings, which exonerated [Mr. Klayman] of any wrongdoing . . . and to instead support a contrary and diabolically adverse position that [Mr. Klayman] inappropriately touched his children." (Id.). Mr. Klayman contends that this is a clear cut conflict of interest which disqualified Mr. Loeb's counsel.

Mr. Klayman's argument is specious at best. First, there is no evidence that Mr. Hannan was aware of or played any role in the decision not to present the charges of abuse to the grand jury. Indeed, Mr. Hannan asserts that he had no knowledge of any such decision or investigation. (Doc. 13, p. 3). Second, to adopt Mr. Klayman's argument would conflict with Ohio statutory authority which mandates that the county prosecutor defend all county officers in legal proceedings.

More importantly, Mr. Klayman has not identified any Florida Rule of Professional Conduct that would be violated by Mr. Hannan's continued representation of Mr. Loeb. Instead, Mr. Klayman cites to rules that focus on situations where an attorney moves

to or from public service (Rule 4-1.11); represents multiple clients simultaneously (Rule 4-1.7); or is precluded from disclosing information concerning a former client (Rule 4-1.9).   He also cites to rules that address situations where an attorney's conflict of interest is imputed to other lawyers in the same firm (Rule 4-1.10); or where an attorney might be called as a witness on behalf of his client (Rule 4-3.7).   As explained in Mr. Loeb's well-reasoned response in opposition, (Doc. 13), none of these situations exist in this case.

Accordingly, for the reasons stated in Mr. Loeb's response, the motion to disqualify counsel and to strike all pleadings filed by Mr. Loeb's counsel shall be Denied.   Mr. Klayman's request to certify this issue for an interlocutory appeal is also Denied for failing to satisfy any of the requirements of 28 U.S.C. § 1292.

## II.     Lack of Subject Matter Jurisdiction

Rule 12(h)(3) of the Federal Rules of Civil Procedure mandates that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."   "A federal court must always dismiss a case upon determining that it lacks subject matter jurisdiction, regardless of the stage of the proceedings, and facts outside of the pleadings maybe considered as part of that determination."   Goodman ex rel Goodman v. Sipos, 259 F.3d 1327, 1331, n. 6 (11th Cir. 2001) (citing Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001)).     Although Mr. Loeb has not raised subject matter jurisdiction as a basis for his motion to dismiss, the Court *sua sponte*

has reviewed the Complaint and finds that it lacks subject matter jurisdiction over this case pursuant to the Rooker/Feldman doctrine,[2] and therefore it must be dismissed.

The Rooker/Feldman doctrine prevents federal courts from exercising jurisdiction over cases brought by "state-court losers" challenging "state-court judgments rendered before the district court proceedings commenced." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 1521-22 (2005). "The doctrine applies not only to claims actually raised in the state court, but also to claims that were not raised in the state court but are 'inextricably intertwined' with the state court's judgment." Powell v. Powell, 80 F.3d 464, 466 (11th Cir. 1996). "A federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" Siegel v. LePore, 234 F.3d 1163, 1172 (11th Cir. 2000) (en banc) (citation omitted).

Mr. Klayman's Complaint is clearly an attempt to use the federal courts to overturn an Ohio state court's decision regarding his child custody arrangement and payment of his former spouse's attorney's fees. For example, the equitable relief Mr. Klayman requests includes: (1) a declaration that Mr. Loeb's actions were unlawful and unconstitutional; (2) an injunction enjoining and permanently restraining Mr. Loeb's allegedly unlawful and unconstitutional actions, and directing Mr. Loeb to take actions to redress and eliminate the purported violations of Mr. Klayman's constitutional rights;

_____

[2]Rooker v. Fidelity Trust Co., 263 U.S. 413 44 S.Ct. 149 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303 (1983).

and (3) an injunction directing Mr. Loeb to publicly apologize to Mr. Klayman and to correct his "false, malicious recommended findings."   (Doc. 1, p. 20).   The only "actions" undertaken by Mr. Loeb that are listed in the Complaint are the factual findings and legal conclusions Mr. Loeb rendered in his Magistrate Decision.  Thus, it is clear that the relief Mr. Klayman requests is in reality to challenge and overturn all or part of Mr. Loeb's Magistrate Decision, which has been adopted by the trial court and affirmed on appeal – *i.e,* a final state court judgment.

It is equally clear that Mr. Klayman was a party in all of the Ohio state proceedings, and that these proceedings resulted in final orders and/or judgments.  In addition, Mr. Klayman does not allege any facts that would support a finding that he was unable to raise in those proceedings any of the alleged constitutional abuses that he attempts to raise before this Court.  Mr. Loeb and the Ohio state courts ruled in a way that Mr. Klayman found unfavorable, and he now appears to be asking this Court for relief that would, in essence, overturn those state court decisions.  Such collateral review of state court decisions is barred by the Rooker-Feldman doctrine and the Court therefore lacks subject matter jurisdiction over this case.  See Drees v. Ferguson, 396 Fed. Appx. 656, 657-58 (11th Cir. Sept. 21, 2010); Redford v. Gwinnett County Judicial Circuit, 350 Fed. Appx. 341, 344-45 (11th Cir. Sept. 25, 2009); Goodman, 259 F.3d at 1332-34; Liedel v. Juvenile Court of Madison County, Ala., 891 F.2d 1542, 1544-46 (11th Cir. 1990); Staley v. Ledbetter, 837 F.2d 1016, 1017-18 (11th Cir. 1988).

### III.     Lack of Personal Jurisdiction and Venue

Alternatively, assuming the Court has subject matter jurisdiction over this case,[3] the case must be dismissed both because this Court lacks personal jurisdiction over Mr. Loeb, and because venue is not proper in this District.

### A.     Lack of Personal Jurisdiction

A plaintiff is required to plead sufficient material facts to form a *prima facie* basis for in personam jurisdiction.  If the plaintiff meets this burden, the burden then shifts to the defendant to challenge the plaintiff's complaint by affidavits or other pleadings. Walack v. Worldwide Machinery Sales, Inc., 278 F. Supp. 2d 1358, 1364 (M.D. Fla. 2003); Hollingsworth v. Iwerks Entertainment, Inc., 947 F. Supp. 473, 476 (M.D. Fla. 1996) (citations omitted).   If the defendant sufficiently challenges the plaintiff's jurisdictional allegations, the plaintiff must affirmatively support his jurisdictional allegations set forth in the complaint. Walack, 278 F. Supp. 2d at 1364, Hollingsworth, 947 F. Supp. at 476.

─────────────────────

[3]In Drees v. Ferguson, 396 Fed. Appx. 656 (11th Cir. Sept. 21, 2010), the Court of Appeals held that claims for equitable relief that challenged a lower court's rulings and judgments in a child custody proceedings were barred due to a lack of subject matter jurisdiction under Rooker-Feldman.  However, the claims for monetary damages relating to the same child custody rulings and judgments were not barred under Rooker-Feldman, but instead were dismissed under the doctrine of judicial immunity.  Although Drees is not binding precedent on this Court, it can be read to at least suggest that where a state-court loser seeks solely monetary damages, a federal court may have subject matter jurisdiction over that claim, at least to the extent to determine whether the claims survive review under Fed. R. Civ. P. 12(b).  In this case, Mr. Klayman seeks both equitable and monetary relief, therefore, out of an abundance of caution the Court will assume it has subject matter jurisdiction at least to the extent Mr. Klayman seeks monetary damages.

First, a review of Mr. Klayman's Complaint readily shows that he has not made the requisite *prima facie* showing of personal jurisdiction over Mr. Loeb. Notably absent from the Complaint are <u>any</u> allegations concerning the state of residence or citizenship of Mr. Loeb. While Mr. Klayman spends an entire page of his Complaint identifying himself and establishing his citizenship in Florida, he fails to allege where Mr. Loeb resides. <u>See</u> Doc. 1, ¶ 5. Nor does the Complaint identify what acts, if any, Mr. Loeb took within the State of Florida. Rather, the only allegations discussing the geography of Mr. Loeb's actions all point to Ohio – he is an Ohio Magistrate, who presided over an Ohio custody dispute, and issued a decision in Ohio that was affirmed by the Ohio courts. On this basis alone, the motion to dismiss is due to be granted. However, even if Mr. Klayman had satisfied his initial burden, the Court finds that there is no personal jurisdiction over Mr. Loeb under Florida's long-arm statute.

A federal court exercising diversity jurisdiction undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. <u>United Technologies Corp. v. Mazer</u>, 556 F.3d 1260, 1274 (11th Cir. 2009); <u>Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.</u>, 421 F.3d 1162, 1166 (11th Cir. 2005). <u>See</u> <u>also</u> <u>Venetian Salami Co. v. Parthenais</u>, 554 So.2d 499 (Fla. 1989) (stating the proper test for personal jurisdiction under Florida law). Federal courts are required to construe the Florida long-arm statute as would the Florida Supreme Court. <u>Oriental</u>

Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V., 701 F.2d 889, 890-91 (11th Cir. 1983).

Florida's long-arm statute, Fla. Stat. § 48.193, provides for both general and specific jurisdiction over a person.  Section 48.193(2) states that general personal jurisdiction arises from a party's "substantial and not isolated" activities within the forum state that are unrelated to the litigation.  See Fla. Stat. § 48.193(2); Madara v. Hall, 916 F.2d 1510, 1516, n. 7 (11th Cir. 1990).   There are no facts alleged that would demonstrate that Mr. Loeb engaged in substantial and not isolated activity in Florida, and Mr. Klayman does not argue in his motion papers that general personal jurisdiction exists over Mr. Loeb..  Therefore this Court does not have general personal jurisdiction over Mr. Loeb.

Florida's long-arm statute also provides for specific personal jurisdiction, whereby the party's actions that form the basis of the litigation can themselves establish personal jurisdiction.  Fla. Stat. § 48.193(1).  Mr. Klayman contends that personal jurisdiction over Mr. Loeb exists under Fla. Stat. §§ 48.193(1)(a)(2) and 1(a)(6)(b).[4]  Mr. Klayman's reliance on these provisions is misplaced.

---

[4]The Florida Legislature amended Fla. Stat. § 48.193 effective July 1, 2013.  This case was filed on June 6, 2013, when the prior version of § 48.193 was still in effect.  For purposes of this case, there is no difference between the two versions of the statute – the sections Mr. Klayman cites to in an attempt to establish specific personal jurisdiction are verbatim identical, the only exception being that the July 1, 2013 version renumbered the sections.  Therefore, the Court will cite to the more recent version that went into effect on July 1, 2013.

Florida Statute § 48.193(1)(a)(2) provides for specific personal jurisdiction where a person commits a tortious act within Florida.  Mr. Klayman argues that Mr. Loeb committed the torts of defamation and deprived Mr. Klayman of his constitutional rights when he published his alleged false and malicious Magistrate Decision.  The fatal flaw in Mr. Klayman's argument, however, is the indisputable fact that Mr. Loeb rendered his Magistrate Decision <u>in Ohio</u>.  There is no evidence and no allegations that Mr. Loeb ever defamed Mr. Klayman, or deprived him of any constitutional rights, in Florida.

Instead, Mr. Klayman argues that the Magistrate Decision was "widely circulated through the media and on the internet, and did, in fact, reach into this district through numerous publications and internet blogs."  (Doc. 16, p. 10).  According to Mr. Klayman, such circulation constitutes electronic communication by Mr. Loeb into Florida, thereby satisfying § 48.193(1)(a)(2).  This argument is not persuasive for the simple reason that there is nothing in the record before the Court – either in evidence or in motion papers – even suggesting that Mr. Loeb <u>himself</u> ever published his Magistrate Decision in Florida.  More specifically, there is nothing in the record suggesting that Mr. Loeb circulated his Magistrate Decision on the internet or placed it on any blogs.  To the contrary, Mr. Loeb points out that his Magistrate Decision is not even viewable online from the Cuyahoga County Clerk of Court website. (Doc. 22, p. 3).[5]

------

[5]Mr. Klayman's reference to <u>Wendt v. Horowitz</u>, 822 So. 2d 1252 (Fla. 2002) is also
(continued...)

Florida's long-arm statute is clear – for personal jurisdiction to exist under § 48.193(1)(a)(2), the tort must have been committed in Florida.  However, in this case, the facts show that any alleged defamation, or deprivation of constitutional rights by Mr. Loeb would have occurred in Ohio when he rendered his Magistrate Decision. Accordingly, there is nothing in the Complaint or in evidence to suggest that this Court has specific personal jurisdiction over Mr. Loeb pursuant to Fla. Stat. § 48.193(1)(a)(2).[6]

Mr. Klayman's reliance on Fla. Stat. § 48.193(1)(a)(6)(b) is also without merit. That section provides for specific personal jurisdiction where a person causes an injury to persons or property located within Florida "arising out of an act or omission by the defendant outside the state, if, at or about the time of the injury . . . Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use."  Mr. Klayman argues that this section is satisfied because Mr. Loeb "manufactured false facts out of whole cloth" and "not only intended that these false statements be widely

---

[5](...continued)
unavailing.  In Wendt, the Florida Supreme Court held that personal jurisdiction existed pursuant to Fla. Stat. § 48.193(1)(a)(2) where the defendant directly and personally made a series of phone calls and sent a series of letters to persons residing in Florida.  No such evidence exists in this case.

[6]This Order should not be interpreted to mean that internet activity cannot create personal jurisdiction in Florida pursuant to Fla. Stat. § 48.193(1)(a)(2).  See Licciardello v. Lovelady, 544 F.3d 1280 (11th Cir. 2008).  Rather, in this case there is no evidence that Mr. Loeb engaged in any such internet activity.

published but also to specifically reach this jurisdiction, by directing his 'communication' into this state. . . ."  (Doc. 16, p. 11).

As discussed above, there are no allegations in the Complaint, and no evidence before the Court, establishing that Mr. Loeb disseminated his Magistrate Decision in Florida, engaged in any communications with anyone in Florida, or directed any communications to be made in Florida.  Similarly, there is no evidence that any "products, materials, or things processed, serviced, or manufactured" by Mr. Loeb were used or consumed in Florida at the same time that Mr. Loeb allegedly caused injury to Mr. Klayman.[7]   Rather, all that is alleged is that Mr. Loeb rendered a Magistrate Decision in a custody dispute in Ohio.  The fact that other unknown persons reported on the decision via the internet does not create personal jurisdiction over Mr. Loeb in Florida.   In addition, the Florida Supreme Court has held that to obtain long-arm jurisdiction under the provisions of Fla. Stat. § 48.193(1)(a)(6)(b), there must be allegations of personal-bodily-injury or property damage.  See Aetna Life & Cas. Co. v. Therm-O-Disc, Inc., 511 So. 2d 992, 994 (Fla. 1987).  No such allegations exist in this case.  See Identigene, Inc. v. Goff, 774 So. 2d 48 (Fla. 2d Dist. Ct. App. 2000) (allegations of emotional distress insufficient to satisfy § 48.193(1)(a)(6)(b)).

---------------------

[7]The Florida courts that have interpreted § 48.193(1)(a)(6)(b) typically apply to it cases where actual goods or products are sold, consumed, or made within Florida, such as products liability actions.  See e.g., Blumberg v. Steve Weiss & Co., Inc., 922 So. 2d 361 (Fla. 3rd Dist. Ct. App. 2006); Mason v. McCrory Corp., 549 So. 2d 1159 (Fla. 3rd Dist. Ct. App. 1989).

Thus, even if Mr. Klayman had made a *prima facie* showing of the Court's jurisdiction, the evidence before the Court sufficiently establishes that there is no personal jurisdiction over Mr. Loeb under Florida's long-arm statute.  And because Mr. Klayman has failed to demonstrate personal jurisdiction, the Court need not consider whether traditional notions of due process have been satisfied.[8]

**B.    Improper Venue**

Lastly, this case is due to be dismissed for improper venue.  Pursuant to 28 U.S.C. § 1391(b), venue is proper in a judicial district: (1) in which any defendant resides; (2) in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no other district in which an action may otherwise be brought, any judicial district in which the defendant is subject to the court's personal jurisdiction.

Mr. Klayman has not alleged or otherwise identified the state of residency of Mr. Loeb, although it can be presumed that it is Ohio.  The allegations and facts uniformly demonstrate that the substantial part of the events that give rise to Mr. Klayman's claims all occurred in Ohio – the state where Mr. Loeb rendered his Magistrate Decision.  And, as the Court previously held, this Court lacks personal jurisdiction over

---

[8]Even if the long-arm statute were somehow satisfied, Mr. Klayman has failed to establish that Mr. Loeb has sufficient minimum contacts with Florida such that due process concerns would be satisfied.  Although Mr. Klayman mentions that Mr. Loeb is a member of the American Arbitration Association and the Federal Mediation and Conciliation Services Labor Panels, Mr. Klayman has not presented any evidence showing that Mr. Loeb ever engaged in any conduct within the State of Florida.

Mr. Loeb. The only argument Mr. Klayman makes is that he is a resident of Florida, and therefore any injury he has suffered took place in Florida. This is not sufficient to establish venue in this Court or in the Middle District of Florida, and the Complaint shall be dismissed without prejudice.[9]

### Conclusion

Accordingly, upon due consideration, it is hereby ORDERED as follows:

(1)     Plaintiff Larry Klayman's Motion to Disqualify Defendant's Out-of-State Counsel or, in the Alternative, to Certify an Immediate Interlocutory Appeal, and Motion to Strike all Pleadings Filed by Defendant's Counsel (Doc. 12) is DENIED;

(2)     Defendant Lawrence R. Loeb's Dispositive Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(3), and/or 12(b)(6) (Doc. 9) is GRANTED; and

(3)     The Clerk is directed to enter judgment dismissing this case in its entirety for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue. The Clerk is further directed to terminate all pending motions and to close the file.

IT IS SO ORDERED.

---

[9]Because the Court is dismissing this case on jurisdictional and venue grounds, the Court will not and need not reach the substantive question of whether Mr. Klayman's claims are barred by the doctrine of judicial immunity.

DONE and ORDERED at Ocala, Florida this 27th day of January, 2014.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Larry Klayman, *pro se*
             Maurya McSheehy